## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARK BAMBACH, *et al.*,

        Plaintiffs,                  CASE NO. 18-14039
                                  HON. DENISE PAGE HOOD

v.

LAPEER COUNTY, *et al.*,

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION TO DISMISS [#31], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE [#32], GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE [#33], GRANTING PLAINTIFFS' MOTION TO STRIKE [#35]

## I.    INTRODUCTION

Plaintiffs Mark Bambach and his minor children, M.B. and E.B., filed this 42 U.S.C. § 1983 action on December 23, 2018, alleging that Defendants violated their Fourth, Fifth, and Fourteenth Amendment rights: (1) during a child protective services investigation; (2) when removing Plaintiff Mark Bambach's ("Bambach") two daughters from his home; and (3) pursuing and participating in judicial proceedings against Bambach.  On July 5, 2019, Defendants Gina Moegle ("Moegle"), Susan Shaw ("Shaw"), and Stacy May ("May"), all employees of the Michigan Department of Health and Human Services ("MDHHS") in Lapeer County (collectively, the "State

1

Defendants") filed a Motion to Dismiss Plaintiff's Second Amended Complaint. [ECF No. 31] Plaintiffs filed a response, to which the State Defendants replied. On July 8-9, 2019, Plaintiffs filed three Motions to Strike the State Defendants' Affirmative Defenses. [ECF Nos. 23, 33, 335] The State Defendants filed a collective response to the Motions to Strike. The Court held a hearing on September 11, 2019 on the four motions.

For the reasons that follow, the Court grants in part and denies in part the Motion to Dismiss [ECF No. 31]; grants in part and denies in part the Motion to Strike the State Defendants' Affirmative Defenses 2, 4, 12, 17, 18, 19, 20, 21, 22, 30, 32, 33, and 37 [ECF No. 32]; grants in part and denies in part the Motion to Strike the State Defendants' Affirmative Defenses 8, 14, 16, 30, 35, 38, 39, and 40 [ECF No. 33]; and grants the Motion to Strike the State Defendants' Affirmative Defenses 3, 6, 23, 24, 25, 26, 27, and 29 [ECF No. 35].

## II.    BACKGROUND

Bambach and his ex-wife, Amy, were the parents of minor children, Plaintiffs M.B. and E.B. (the "Children"). Bambach and Amy were divorced effective September 2013, and Bambach was the custodial parent, with Amy seeing the Children very little between November 2012 and April 2015. Beginning in May 2015, Amy began seeing the Children more. Amy was scheduled to have the Children

from December 23, 2015 to the morning of December 25, 2015.  Instead, due to Amy's contentions that Bambach was sexually abusing the Children, the Children were not returned to Bambach on December 25, 2015 and he did not regain custodial rights until November 2016.

Plaintiffs brought this Section 1983 action against Defendants after a Child Protective Services ("CPS") investigation and ensuing events resulted in the Children not being permitted to return to Bambach's home for more than 10 months.  Plaintiffs allege in the Second Amended Complaint that:

> On Friday, 12/25/15, ***Despite having no warrant or authorized petition***, Moegle notes, in her 12/25/15 5:30 PM entry, that "***Amy was informed that this worker will call Mark and <u>inform him that the girls are not returning home</u>*** until CPS can investigate." (see CPS Investigation Report, p. 8, 12/25/15 5:30 PM entry (emphasis added [by Plaintiffs])).

ECF No. 9, PgID 173 (¶ 39).  Plaintiffs allege that Bambach was told on December 29, 2015 that the Children would not be returned to him until the CPS investigation was complete:

> On 12/29/15 at 9:22 AM, Mark called Moegle and wanted to know when he was getting his kids back. **Despite [CPS] not having a warrant or an authorized petition**, according to Moegle:
>
> > He was informed that this worker does not know the answer to his questions due to an ongoing investigation. ***<u>He was informed that there is policy to follow</u>*** and its CPS's goal to keep the children safe.
>
> (see CPS Investigation Report, p. 9, 12/29/15 9:22 PM entry (emphasis added)).

ECF No. 9, PgID 174 (¶ 42).

Plaintiffs allege that Moegle, an unlicensed CPS investigator at the MDHHS in Lapeer County, was investigating the claims that Bambach sexually abused his daughters until January 13, 2016, when she signed a removal petition, which was heard by the Court the next day. *Id*. at 194. Plaintiffs allege that Moegle made false statements and omissions to justify the seizure of his daughters, particularly after Bambach informed Moegle on December 30, 2015 that he would not speak to law enforcement and was taking the Fifth Amendment. *Id.* Plaintiffs further allege that Moegle "knowingly made false statements and omissions in order to 'justify' her removal of the Bambach children" from Bambach's home. [ECF No. 9 at ¶¶ 153-156, 165-167, 234-235]

Shaw was a licensed CPS Supervisor with the MDHHS in Lapeer County and Moegle's supervisor during the time period relevant to this action. Plaintiffs allege that, on December 30, 2015, Moegle conducted a Case Conference with the Children's Supervisor (Shaw), who was provided information regarding the case. ECF No. 9, PgID 211. On January 12, 2016, Moegle conducted another Case Conference with Shaw at the Lapeer County MDHHS office. Shaw was provided information regarding the case, and this Case Conference was deemed a "Successful Supervision." ECF No. 9, PgID 211. Moegle stated in her deposition that Shaw was the one who

authorized the Petition. See ECF No. 9, PgID 212.

May was a CPS Ongoing Worker with the MDHHS in Lapeer County with a Master's in Social Work and a limited licensed Counselor requiring supervision by someone fully licensed. May did not become involved in the MDHHS case until after the Court ordered the Children removed from Bambach's custody.  Plaintiffs allege that May, as the Ongoing Worker on the MDHHS case, "knew or should have known that the order to remove the Bambach Children . . . was based upon Moegle knowingly making falsities and omissions." [ECF No. 9 at ¶¶ 271-272, 275]

Plaintiffs assert that all of their claims for relief relate to the investigative and administrative actions by the State Defendants: (a) removing the Children from Bambach's custody without a warrant in violation of the 4th Amendment (Moegle); (b) removing the Children from Bambach's custody without affording Plaintiffs their procedural due process rights, in violation of the 14th Amendment (Moegle and Shaw); (c) removing the Children from Bambach's custody without any justification in violation of their 14th Amendment substantive due process rights (Moegle and Shaw); (d) executing a removal order in violation of the 4th Amendment which was issued based upon false statements and omissions that were made to the judge and which the judge relied upon in issuing that removal order (Moegle and Shaw); (e) implicitly authorizing, approving, or knowingly acquiescing to a subordinate's

unconstitutional conduct (Shaw); (f) failing to intervene when May knew that Moegle executed a removal order in violation of the 4th Amendment which was issued based upon false statements and omissions that were made to the judge and which the judge relied upon in issuing that removal order (May); and (g) imposing severe sanctions for failing to waive the 5th Amendment right against self-incrimination (Moegle).

## III.   MOTION TO DISMISS

### A.   Applicable Standard

In deciding a motion brought pursuant to Rule 12(c), the standard is the same as that used in evaluating a motion brought under Fed.Civ.P. 12(b)(6). *See, e.g., Stein v U.S. Bancorp, et. al*, 2011 U.S. Dist. LEXIS 18357, at *9 (E.D. Mich. February 24, 2011). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. The Court must accept all well-pleaded factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims

comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.    Analysis

In this case, the key issue is when the Children were "removed" from Bambach's home/custody; it is an issue that permeates the claims and defenses of Plaintiffs and the State Defendants, respectively.

The State Defendants assert that the Children were not removed until January 15, 2016, when the Lapeer County Family Court issued an Order of Removal that preliminarily and temporarily but formally deprived Bambach of custodial rights. The State Defendants suggest that Bambach could have pursued his rights to custody of the Children at any time prior to the entry of the Order of Removal, as he had custodial rights of the Children between December 25, 2015 and January 15, 2016.

Plaintiffs contend that the Children were removed from Bambach 20 days earlier, on December 25, 2015, when Moegle determined that she would call Bambach and "inform him that the girls are not returning home until CPS can investigate." ECF No. 9, PgID 173 (¶ 9). Plaintiffs also allege that "Moegle removed the Bambach

Children from their custodial home [at Bambach's home] on 12/25/15 . . . without first obtaining judicial pre-approval or a warrant." ECF No. 9, PgID 194.  For these reasons, Plaintiffs allege that the removal of the Bambach Children occurred without notice or consent; that Bambach was not given an opportunity to present witnesses or evidence prior to their removal. *Id*. at 198-99.

Plaintiffs argue that the Children could be and were seized and removed from Bambach's home, even though such seizure and removal did not occur at the home. Citing *In re Detmer/Beaudry*, 321 Mich.App.49, 54 (2017).  As Plaintiffs acknowledge, the removal in that case occurred when "[t]he trial court's order moved AB's residence to his nonrespondent-father's home and conditioned respondent-mother's visitation on the discretion of DHHS . . . [such that] the trial court 'removed' AB from the respondent-mother." *Id.* at 64.  Accordingly, the removal in *Detmer/Beaudry* stemmed from a court order, not the act of a social worker.

Plaintiffs argue that, even though Bambach may have initially consented to the Children staying with their mother and the implementation of a safety plan, Bambach's consent was withdrawn and became involuntary no later than December 29, 2015, when Bambach called Moegle and demanded to know when he was getting the Children back (by which point Moegle knew that Bambach intended to hire an attorney to accomplish that), long before the Order of Removal was issued on January

15, 2016.

Plaintiffs allege that Bambach never gave consent to the Children being left with their mother, nor did Moegle offer him that opportunity.  As indicated above, Plaintiffs allege that Moegle had determined that the Children would be placed with their mother on December 25, 2015, and would not be returning to Bambach, even before Moegle spoke to Bambach. ECF No. 9, PgID 173 (¶ 9).  For purposes of addressing the Motion to Dismiss, the Court accepts as true Plaintiffs' allegations that Moegle (CPS) removed the Children from Bambach's custody because Moegle told him that she would not return them to Bambach during the pendency of the CPS investigation.

Plaintiffs also allege that, in addition to other items identified above, Moegle's notes reflect:

(a)   Moegle claimed on the evening of December 25, 2015 that Bambach agreed that the Children could stay with Amy while Moegle investigated the child abuse claims;

(b)   Amy advised Moegle on the morning of December 28, 2015, that Bambach was hiring a lawyer to get his kids back;

(c)   Bambach spoke to Moegle on the phone on December 29, 2015 and demanded to know when he was getting the Children back, who completed the exam on them, and indicated that he suspected that Amy was involved in the accusations;

(d)   On December 30, 2015, Bambach first demanded to know what would happen next, asked if the Children had been interviewed, and informed

Moegle he would not speak to law enforcement without his attorney present; and

(e)    On December 30, 2015, Bambach later told Moegle that he would not speak to law enforcement, he was invoking his right under the Fifth Amendment to remain silent, and he did not sexually abuse the Children.

ECF No. 9, PgID 194-95. Although the allegations include that Bambach initially agreed to have the Bambach Children stay with Amy while Moegle investigated the claims, it is further alleged that on December 28, 2015, Bambach told his family he was hiring an attorney to get them back and that on December 29, 2015, Bambach asked Moegle on a phone call when the Children would be returned to him and demanded to know what would happen next. *Id.* at 194.

Plaintiffs rely on *Davis v. Kendrick*, No. 14-12664, 2015 WL 6470877 (E.D. Mich. Oct. 27, 2015), and *Farley v. Farley*, 225 F.3d 658, 2000 WL 1033045 (6th Cir. 2000). The *Davis* court denied summary judgment to a social worker defendant where the custodial mother never consented to a safety plan. *Davis*, 2015 WL 6470877 at *8 (the court must accept as true for purposes of a summary judgment motion plaintiff's testimony that she  "adamantly maintain[ed] – that she never consented to the imposition of a safety plan requiring her daughter be placed with [the child's father] instead of going home with" plaintiff). The *Farley* court denied summary judgment because the plaintiff's consent to placement of the children with their father "was not

voluntary during the entire time period involved." *Farley*, 2000 WL 1033045, at *7.[1]

For purposes of assessing the Motion to Dismiss, the Court must accept as true Plaintiffs' allegations that Bambach did not consent or revoked his consent to the imposition of a safety plan that required the Children to be placed with Amy.

### 1.  *Absolute Immunity*

The State Defendants assert that they are entitled to absolute immunity because the Children were not removed until the January 15, 2016 Order of Removal issued by the Lapeer County Circuit Court, Family Division (the "Lapeer Family Court"). Plaintiffs complain that Moegle's removal petition, filed on January 13, 2016, included the following false statements and omissions:

---

[1]The *Farley* court found the following facts to be material:

(1) Ms. Farley was coerced into signing the voluntary plan of action, having been made to feel she had no choice in the matter; (2) on several occasions both Brock and Grissom failed to comply with Ms. Farley's demands for her children's return and seemed to imply she had no such right; and (3) Brock and Grissom attempted to intimidate Ms. Farley to submit to the continued removal of her children, culminating in Brock's threat to take away Ms. Farley's third child, Dustin, should she hire an attorney in an attempt to regain physical custody of Christina and David, Jr.

*Id*. at 7. The court ruled that if found to be true, these facts would support the conclusion that the defendants violated the plaintiff's constitutionally protected rights, and determined that consent, even if voluntarily given, can be revoked. *Id.*

a) Moegle's claim that Dr. Janssen indicated that he had a "serious" suspicion of sexual abuse, when he never indicated that he had a serious suspicion; b) Moegle's claim that Dr. Janssen indicated that the girls' vaginal areas were red and irritated, when he never made any such observation; c) Moegle's claim that "a child" made the statement during the forensic interview that "he put his fingers in there", but neglected to mention that the child was pointing to her chest and then denied that Mark had put his fingers anywhere else; d) Moegle's insinuation that when one of the girls said it was "a secret" that the secret had to do with some kind of sexual abuse, when the child was talking about Chapstick; e) Moegle's claim that Del Vecchio, the SANE Nurse Examiner, indicated the girls' vaginal openings indicated digital penetration when no such statement was made by Del Vecchio, but rather was stated by Amy to Del Vecchio; f) Moegle's claim that E.B. also disclosed to Amy that Mark had put his fingers inside her, when Amy never made any such accusation in any of her statements that E.B. disclosed; and g) Moegle's claim that the alleged disclosures were "spontaneous" when she completely ignored exculpatory evidence—Amy's conflicting statements to the Almont Village P.D. where she admitted she had been talking to the girls since October about good-touch/bad-touch and asking if anyone inappropriately touches them as well as her 7-Page Hand-Written Statement.

See ECF No 9, PgID 202-03.

Plaintiffs allege that Shaw conducted two Case Conferences with Shaw (acting as the Children's Supervisor), on December 20, 2015 and January 12, 2016, at the Lapeer County MDHHS office. ECF No. 9, PgID 211. Moegle further stated in her deposition that Shaw was the one who authorized the Petition. See ECF No 9, PgID 212 (¶ 190). Plaintiffs allege that May was required to have reviewed the entire case file and would have learned of Moegle's falsities and omissions. ECF No 9, PageID.233. Plaintiffs claim that, by May's failure to intervene in the continued

execution of the order removing the Children from their custodial home when she knew that the removal order was based upon Moegle's falsehoods and omissions, May deprived the Children of their right to be free from unlawful searches and seizures in violation of the Fourth Amendment of the United States Constitution. ECF No. 9, PgID 233.

The law is well-established that social workers are entitled to absolute immunity with respect to any actions taken as a "legal advocate when initiating court proceedings, filing child-abuse complaints, and testifying under oath, . . . even under allegations that the social worker intentionally misrepresented facts to the family court." *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015) (citing *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 723-25 (6th Cir. 2011)). *See also Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (*en banc*) (absolute immunity extends to social workers "when they are acting in their capacity as legal advocates–initiating court actions or testifying under oath-not when they are performing administrative, investigative, or other functions.").

Pursuant to *Barber* and *Pittman*, the Court concludes that all three of the State Defendants (Moegle, Shaw, and May) are entitled to absolute immunity with respect to acting as legal advocates when: (1) initiating the court proceedings to seek removal of the Children from Bambach; (2) the filing of the removal petition; and (3) any

actions taken in furtherance of the child-custody proceedings involving the Children.

The Court makes this finding even if, as Plaintiffs argue, their claims in Counts IV, VIII, and IX are based on the principle that a state actor cannot rely on a judicial determination of probable cause to justify executing a warrant if that officer knowingly makes false statements and omissions to the judge. The Sixth Circuit has clearly established that the doctrine of absolute immunity applies in exactly those circumstances. *See Pittman*, 640 F.3d at 723-25 (social worker making misrepresentations in child-abuse complaint and supporting documents has absolute immunity because she was acting "in her capacity as a legal advocate"); *Barber*, 809 F.3d at 844 (social worker entitled to absolute immunity when making false and misleading statements of fact in a protective-custody petition because he did so "in his capacity as a legal advocate initiating a child-custody proceeding in family court"). Accordingly, the State Defendants enjoy absolute immunity regarding the alleged false statements and omissions to the Lapeer County Family Court.

The Court also concludes that May is entitled to absolute immunity with respect to all of Plaintiffs' allegations against her. A social worker who fails to "perform[] an adequate investigation at any time after" the child's removal from the plaintiff's home by the juvenile court is entitled to absolute immunity. *Rippy v. Hattaway*, 270 F.3d 416, 422 (6th Cir. 2001). Plaintiff has alleged that May "fail[ed] to intervene in

the continued execution of the order removing the Bambach Children from their custodial home because [May] knew that the order was based upon Moegle's falsehoods and omissions." ECF No. 9, PgID 233 (Paragraph 270).  Plaintiffs allege that May acted (or failed to act) on July 27 and 29, 2016, August 31, 2016, and September 28, 2016. *Id.* at PgID 188-89 (Paragraphs 90-97).  All of Plaintiffs allegations against May occurred after the January 15, 2016 Order of Removal was entered.

The Court is not persuaded by Plaintiffs' argument that "[a] CPS worker, such as May, is not entitled to absolute immunity for the removal of children from a home because, in such circumstances, the social worker is acting in a police capacity rather than as a legal advocate." Citing *Kovacic v.Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 694 (6th Cir 2013)).  Plaintiffs' allegations do not support a finding that May was acting in a police capacity.  Plaintiffs allege only that May supported and sought continuation of the existing order of removal, not that May was involved in the actual removal of the Children from Bambach's home. *Kovacic*, 724 F.3d at 694-95 (citations omitted) ("Concerning the removal of the children from the home, the district court did not err in denying the social workers' motion for absolute immunity.  When the social workers removed the children from the home, they were acting in a police capacity rather than as legal advocates.").

15

As explained in *Barber*, a social worker may not invoke absolute immunity with respect to her investigative actions preceding the preparation, filing, initiation, and efforts in pursuing approval of the removal petition. *Id.* at 844 (citing *Pittman*, 640 F.3d at 724). For that reason, the Court denies absolute immunity for the State Defendants other than May (Moegle and Shaw) with respect to "all of Defendants' actions [that] were investigative and administrative in nature[, as] Plaintiffs' claims for relief [in Counts] I, II, [III], V, VI, and VII relate to the conduct of removing the [C]hildren from [Bambach's] custody prior to the preliminary hearing which occurred on January 14, 2016–without a warrant, without procedural due process, and in violation of substantive due process." *See* ECF No. 41, PgID 944-45.

### 2.    *Qualified Immunity*

The State Defendants argue that they are entitled to qualified immunity, and the Court must consider whether Moegle and Shaw are entitled to qualified immunity with respect to their alleged conduct prior to the preparation and filing of the removal petition. As recently stated by the Supreme Court:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the

plainly incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotation marks omitted).

Qualified immunity is a two-step process. *Saucier v. Katz*, 533 U.S. 194 (2001), overruled on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009). First, the Court determines whether, based upon the applicable law, the facts viewed in a light most favorable to the plaintiff show that a constitutional violation has occurred. Second, the Court considers whether the violation involved a clearly established constitutional right of which a reasonable person in the defendant's position would have known. *Id.*; *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005). The Court need not decide whether a constitutional violation has occurred if it finds that government official's actions were reasonable. *Jefferson v. Lewis*, 594 F.3d 454, 460 (6th Cir. 2010). Only if the undisputed facts or the evidence, viewed in a light most favorable to the plaintiff, fail to establish a prima facie violation of clear constitutional law can this court find that the Defendants are entitled to qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff also must establish that each

individual defendant was "personally involved" in the specific constitutional violation. *See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

The Sixth Circuit has recognized that the Fourth Amendment applies to social workers, such that they are not entitled to qualified immunity if they effectuate a warrantless removal of children from their homes, *Barber*, 809 F.3d at 845; *Kovacic*, 724 F.3d at 699, and that the Fourteenth Amendment requires that parents be given notice – and a full opportunity for a hearing to present witnesses and evidence on their behalf – before a child is removed. *Doe v. Staples*, 706 F.2d 985, 990 (6th Cir. 1983); *Kovacic*, 724 F.3d at 700 (relying on *Doe*) (""[n]o reasonable social worker could conclude that the law permitted her to remove a child without notice or a pre-deprivation hearing where there was no emergency").  Plaintiffs argue that this law was clearly established on December 25, 2015, when the State Defendants removed the Children from the custody of Bambach, that a warrant and an opportunity to be heard was required before removing them.

In the Sixth Circuit, a plaintiff must "show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional

conduct of the offending subordinate." *Coley v. Lucas Cnty.*, 799 F.3d 530, 542 (6th

Cir. 2015) (quoting *Taylor v. MDOC*, 69 F.3d 76, 81 (6th Cir. 1995); *Schulkers v.*

*Kammer*, 367 F.Supp.3d 626, 647 n.12 (E.D. Ky. 2019). Plaintiffs argue that this law

was clearly established before Shaw began working with Moegle in late December,

2015. A social worker has a duty to intervene when a co-worker engages in

unconstitutional conduct. *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996) ("the

precedent holding police officers and correctional officers liable for failure to

intervene was sufficient to place a nurse who caused the conflict on notice that she had

a duty to protect plaintiff while under her charge."). Plaintiffs contend that this law

was clearly established before May commenced as the Ongoing Worker in January

2016.

### a.  Fourth and Fourteenth Amendment Claims

The State Defendants contend that they did not remove the Children from

Bambach's home. They assert that the Family Court made the decision to remove the

Children from Bambach's home, so the State Defendants did not violate Bambach's

or the Children's constitutional rights. Citing *Pittman*, 640 F.3d at 729; *Krantz v. City*

*of Toledo Police Dep't*, 197 F. App'x 446, 453 n.5 (6th Cir. 2006). The State

Defendants argue that Plaintiffs premise their claims on the belief that the Children

were removed by Moegle on December 25, 2015. The State Defendants argue that

Plaintiffs' belief is erroneous because there was no warrantless entry into Bambach's home, nor any removal of the Children prior to the entry of the January 15, 2016 Order of Removal by the Lapeer Family Court. The State Defendants suggest that the Children were with their mother, who consented to Moegle entering her home and evaluating the Children's examinations. The State Defendants offer that the Children then remained with their mother and were not taken or removed from Bambach's custody. They argue that, if Bambach did not want the Children to remain with their mother, even if their mother would not allow the Children to return to Bambach, Bambach could have enforced his custody order.

The State Defendants also assert that, even if the allegations support a violation of Plaintiffs' Fourth and Fourteenth Amendment rights, those rights were not clearly established and the State Defendants could have reasonably believed that their actions were lawful. The State Defendants indicate that they did not make a warrantless entry or remove (physically take) the Children from Bambach's home, and there was no reason for them to believe that having the Children remain with their mother violated any of the Plaintiffs' clearly established constitutional rights.

Plaintiffs contend that their Fourth and Fourteenth Amendment claims are premised on the fact that the State Defendants took the Children from Bambach's custody without a court order on December 25, 2015 when they "seized" the Children

20

from him (the custodial parent) and placed the Children with Amy (the non-custodial parent). Citing *Davis*; *Brignoni-Ponce*, 422 U.S. 873, 878 (1975) (citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person").  Plaintiffs argue that Moegle determined – without even talking to Bambach — that she would not let the Children return to him.

Plaintiffs assert that a social worker denies substantive and procedural due process rights when he or she lies, coaches false allegations of abuse, and summarily denies a parent lawful custody of his child. Citing *Davis*, 2015 WL 6470877, at *10. Plaintiff contends that the law was clearly established that a social worker cannot execute a removal if she knowingly made false statements and omissions to the court that issued the removal order, where such order would not have been issued but for such falsities and omissions. Citing *Barber*, 809 F.3d at 848.

Plaintiff allege that Shaw implicitly authorized, approved, or knowingly acquiesced to: (1) Moegle seizing the Children from their custodial home on December 25, 2015; (2) executing a petition for order of removal that contained falsehoods and omissions; and (3) barring the Children from the care, custody, education, and association of Bambach without first obtaining judicial pre-approval or a warrant, without notice prior to the removal of the reasons for removal, nor a full

opportunity at the hearing to present witnesses and evidence on their behalf. ECF No. 9, PgID 217. Plaintiffs believe all of this was done in violation of the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution. ECF No. 9, PgID 224.  Plaintiffs also allege that conduct deprived the Children of their right to be free from unlawful searches and seizures in violation of the Fourth Amendment of the United States Constitution. See ECF No 9, PageID 229.

The Court finds that, for purpose of evaluating the Motion to Dismiss, Plaintiffs allegations regarding the conduct of Moegle and Shaw are sufficient to establish that they undertook a warrantless removal of the Children from Bambach's home, without notice and a full opportunity for a hearing to present witnesses and evidence. *Doe v. Staples*, 706 F.2d at 990; *Kovacic*, 724 F.3d at 700.   Plaintiffs also have set forth allegations that "show that a supervisory official [Shaw] at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Coley,* 799 F.3d at 542.  The Court denies the Motion to Dismiss Moegle and Shaw on the basis of qualified immunity with respect to Plaintiffs' Fourth and Fourteenth Amendment claims.

### b.     Fifth Amendment Claim

The State Defendants contend that Moegle is entitled to qualified immunity with respect to Bambach's Fifth Amendment claim.  They argue that Bambach cannot

succeed on his claim because there was no criminal proceeding against him and the child protection petition was dismissed. The State Defendants argue that, for these reasons, Bambach cannot show that illegally obtained statements were used against him, nor are there any allegations that such statements were used against him. *McKinley v. City of Mansfield*, 404 F.3d 418, 430 (6th Cir. 2005). The State Defendants assert that Plaintiff has alleged only that Moegle "refused to offer any services to [Bambach] and refused to work towards a goal of reunification . . . because [he] had refused to waive his Fifth Amendment right against compelled self-incrimination." ECF No. 9, PgID 236 (at Paragraphs 288-89). The State Defendants claim this is not enough.

Plaintiffs do not address the *McKinley* case. Instead, Plaintiffs argue that "a constitutional violation arises when a person is subject to severe consequence unless he . . . waives the Fifth Amendment right against compelled self-incrimination." ECF No. 41, PgID 451-52 (citing – but not quoting – *McKune v. Lile*, 536 U.S. 24, 35 (2002); *In re Blakeman*, 326 Mich. App. 318, 338 (2018) ("By requiring respondent to confess to the criminal abuse of the toddler in order to regain care and custody of his children, the trial court was requiring an inculpatory admission against respondent's penal interests.").

The Court is not persuaded that *McKinley* is relevant because there is no

allegation that Bambach made any statement that was compelled, nor is *In re Blakeman*, on its face, applicable to the instant case because that case was based upon the fact that the <u>court</u> would not allow a parent unsupervised visitation unless the parent failed to confess to fracturing the child's skull.  The Court also does not find that the *McKune* court stated what Plaintiffs suggest – that there is a constitutional violation if a person is subjected to severe consequence unless he waives his Fifth Amendment right against compelled self-incrimination.  Rather, the *McKune* court, in the course of addressing a claim by a prisoner, stated that the Fifth Amendment "constitutional guarantee is only that the witness not be *compelled* to give self-incriminating testimony." *McKune*, 536 U.S. at 36 (citations internal quotations omitted) (emphasis in original).

The Court is persuaded that the rationale of the *In re Blakeman* decision is applicable to this case.  As that court stated:

> The preservation of one's parental rights presents an imperative at least as great as continued municipal employment, eligibility for public contracting, and maintenance of one's professional license, and if the latter may not be used to condition the waiver of one's right against self-incrimination, neither should one's parental rights. By requiring respondent to confess to the criminal abuse of the toddler in order to regain care and custody of his children, the trial court was requiring an inculpatory admission against respondent's penal interests. This could also be self-defeating because such an admission may lead to criminal charges that end with respondent being taken away from his children for incarceration. This practice offends due process when a respondent is required, on pain of being deprived of the care and custody of his

children, to confirm the trial court's determination that he had committed severe child abuse. Even more, requiring respondent to admit to the child abuse after he had already testified at trial and denied any wrongdoing would subject him to possible perjury charges. The record clearly shows that the trial court violated respondent's Fifth Amendment right against self-incrimination when it conditioned unsupervised visitation and eventual reunification on respondent's admission to the child abuse.

*In re Blakeman*, 326 Mich. App. at 339.

Plaintiffs assert that they have alleged a valid Fifth Amendment claim on behalf of Bambach against Moegle, as she was requiring him to confess to sexually abusing the Children in order to receive any services from Child Protective Services. Citing *In re Blakeman*, 326 Mich. App. at 338. Plaintiffs state that Bambach told Moegle he would not speak to law enforcement, was invoking his Fifth Amendment rights, and did not sexually abuse his daughters, which resulted in Moegle refusing to offer him any services or work toward reuniting Bambach and the Children, with the Lapeer County Prosecutor's Office still threatening to issue criminal charges against him. Plaintiffs specifically alleged:

> 289. Moegle refused to offer any services to Mark and refused work towards a goal of reunification with Mark and his minor children because Mark had refused to waive his Fifth Amendment right against compelled self-incrimination in order to receive those services and in order to work towards that goal of reunification.

> 290. Moegle (acting under color of state law), violated Mark's Fifth Amendment right against compelled self-incrimination by subjecting him to a severe consequence of the loss of his constitutional right to provide for the care, custody, and management of his children

unless he waives that right.

291. At all relevant times, the Lapeer County Prosecutor's Office was still waiting to issue criminal sexual conduct charges against Mark. Even as late as 10/13/16, Hoebeke sent a letter to Assistant Prosecuting Attorney David Campbell requesting that the Prosecutor's Office take the criminal charges off the table; however, APA Campbell refused and continued to hold the threat of those charges over Mark's head.

292. Any compelled self-incriminating statement made by Mark to Moegle in response to the severe consequence of the loss of his constitutional right to provide for the care, custody, and management of his children made in order to receive services and to be reunified with his children, would have been used against him by the Prosecutors in their issuance of the criminal sexual conduct charges.

ECF No. 9, PgID 236 (¶¶ 289-92).

The alleged actor in this case (Moegle) is not a judge, but she is a state actor. By conditioning any services or working toward reunification of the Children with Bambach on Bambach agreeing to talk (make statements) to the State Defendants, Moegle was requiring a (possible) inculpatory admission from Bambach against his penal interests, which could result in Bambach being deprived of the Children for an even longer period of time than he was, both in late December 2015 and until November 2016. The Court concludes that the allegations against Moegle sufficiently allege the violation of a clearly established constitutional right of which any reasonable person in her position would have known. The Court denies qualified immunity for Moegle with respect to Bambach's Fifth Amendment claim against her.

26

### 3. *Failure to State a Claim*

The State Defendants argue that Plaintiffs claims fail because they are all premised on the belief that the Children were removed on December 25, 2015. As the Children were not removed until the Order of Removal was issued on January 15, 2016, the State Defendants argue, there is no basis for a Fourth or Fourteenth Amendment claim. For the reasons stated above, the Court rejects this argument with respect to the allegations against Moegle and Shaw that are not dismissed pursuant to absolute immunity. More specifically, as discussed above, based on the allegations, the Court is not persuaded that Shaw "merely supervised Moegle" and did not make any decisions regarding the Children. Plaintiffs have alleged that Shaw had two case conferences with Moegle, allegedly approving the removal petition and removal of the Children from Bambach's custody. For that reason, the Court cannot conclude that the allegations regarding Shaw are based only on respondeat superior. Rather, the Court must instead treat those allegations as stemming from Shaw's possession of information that "reveal[ed] a strong likelihood of Moegle's unconstitutional conduct," as evidenced by Moegle's Investigative Report stating that Moegle had two successful supervisions with Shaw.

As discussed above, the Court dismisses Plaintiffs' claims against May based on absolute immunity and need not evaluate the sufficiency of Plaintiffs' allegations

regarding May.

## IV.   MOTIONS TO STRIKE

After the State Defendants filed an answer to the Amended Complaint, Plaintiffs filed three separate Motions to Strike the State Defendants' Affirmative Defenses.

### A.   Applicable Law

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike an affirmative defense is properly granted when "plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Operating Eng'rs Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). *See also Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2nd Cir. 2003) (an affirmative defense is something specific – "a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.").

As another Eastern District of Michigan Judge stated, there are two viewpoints regarding the specificity required when asserting an affirmative defense. *See Exclusively Cats Veterinary Hosp., P.C. v. Pharm. Credit Corp.*, No. 13-CV-14376, 2014 WL 4715532, at **2–3 (E.D. Mich. Sept. 22, 2014).  In *Exclusively Cats*, the

court reasoned:

> The Sixth Circuit has not yet determined whether the heightened pleading standard applicable to claims for relief also applies to affirmative defenses. Defendant cites *Lawrence v. Chabot,* a case decided before *Twombly* and *Iqbal,* in which the Sixth Circuit upheld a magistrate judge's refusal to strike affirmative defenses under the fair notice standard. 182 F. App'x 442, 456–57 (6th Cir. 2006) ("An affirmative defense may be pleaded in general terms and will be held to be sufficient ... as long as it gives plaintiff fair notice of the nature of the defense"). In this regard, the Sixth Circuit (again pre-*Twombly* and *Iqbal*) has held the affirmative defense "Plaintiffs' claims are barred by the doctrine of *res judicata*" sufficient under Rule 8(c). *Davis v. Sun Oil Co.,* 148 F.3d 606, 612 (6th Cir. 1998). Defendant maintains that, in the absence of Sixth Circuit guidance to the contrary, *Lawrence* still controls. *See Hahn v. Best Recovery Servs., LLC,* No. 10–12370, 2010 WL 4483375, at *2 (E.D. Mich. Nov. 1, 2010).

> Another Sixth Circuit case, *Montgomery v. Wyeth,* 580 F.3d 455, 467–68 (6th Cir. 2009), lends support to defendant's position. In *Montgomery,* decided after both *Twombly* and *Iqbal,* the court held that "[t]he Federal Rules of Civil Procedure do not require a heightened pleading standard for a statute of repose defense." *Montgomery,* 580 F.3d at 468. The court went on to cite Rule 8(b)(1)'s requirement that a party "state in short and plain terms its defenses to each claim," as well as the fair notice standard in *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Montgomery,* 580 F.3d at 468.

> District courts in this Circuit are divided over the application of *Twombly* and *Iqbal* to affirmative defenses. *Compare, e.g., Safeco,* 2008 WL 2558015, at *1 (applying *Twombly* standard to affirmative defenses) with *Int'l Outdoor, Inc. v. City of Southgate,* No. 11–14719, 2012 WL 2367160, at *7–9 (E.D. Mich. Apr. 6, 2012) (declining to apply *Twombly* and *Iqbal* to affirmative defenses and citing cases). The primary reasons courts give for applying the heightened standard to affirmative defenses are the desirability of avoiding unnecessary discovery costs and the similarity in language between Rules 8(a) and 8(b). *See HCRI TRS Acquirer, LLC v. Iwer,* 708 F.Supp.2d 687, 690–91 (N.D. Ohio 2010).

> Courts declining to apply the heightened pleading standard to affirmative

defenses have tended to focus on the difference in language of Rules 8(a) and 8(b), or on the fact that the holdings in *Twombly* and *Iqbal* were limited to Rule 8(a). As to language, Rule 8(a) requires a "short and plain statement of the claim *showing* the pleader is entitled to relief" (emphasis added), while Rule 8(b) only requires a statement "in short and plain terms" of "defenses to each claim." *See Iqbal,* 556 U.S. at 679 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief" (internal quotation marks omitted)). Moreover, as at least one other decision in this district has pointed out, Rule 8(c) governs affirmative defenses and contains no language similar to that in Rule 8(a). *First Nat. Ins. Co. of America v. Camps Servs., Ltd.,* No. 08–12805, 2009 WL 22861, at *2 (E.D. Mich. Jan. 5, 2009).

In sum, controlling Sixth Circuit law and the language of the applicable rules weigh against application of *Twombly* and *Iqbal*'s heightened pleading standard to defendant's affirmative defenses here. The policy rationale of containing discovery costs, while undeniably important, is not enough to tip the scales in the other direction. The Court will therefore apply the fair notice pleading standard in determining whether defendant's affirmative defenses merit a more definite statement under Rule 12(e) or striking under Rule 12(f).

*Exclusively Cats*, 2014 WL 4715532, at **2–3 (emphasis in original).  For the same reasons espoused by the *Exclusively Cats* court, this Court is persuaded that it is most appropriate to apply the fair notice pleading standard when determining whether Defendants sufficiently pleaded their affirmative defenses.

Finally, although there are some exceptions, it is generally understood that the failure to allege an affirmative defense in the first responsive pleading may result in a waiver of the defense. *See Horton v. Potter*, 369 F.3d 906, 911-12 (6th Cir. 2004). The purpose of such a general rule is to "give the opposing party notice of the

affirmative defense and a chance to rebut it." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F2d 1439, 1445 (6th Cir 1993). For this reason, at the outset of a case, without the luxury of time or the benefit of discovery, defendants are required to plead all of their affirmative defenses or risk waiving those that are not pled along with the answer. *See Paducah River Painting, Inc. v. McNational, Inc.*, 2011 WL 5525938, at *2 (W.D. Ky. Nov. 14, 2011); *Lane v. Page*, 272 F.R.D. 581, 596 (D.N.M. 2011) ("Plaintiffs can prepare their complaints over years, limited only by the statute of limitations, whereas defendants have only twenty-one days to file their answers."). Taking those considerations into account, the Court now turns to Plaintiffs' challenges to the State Defendants' affirmative defenses, noting that the State Defendants filed a response, but no reply was filed regarding any of the Motions to Strike.

**B.    ECF No. 32**

In their first Motion to Strike, Plaintiffs ask the Court to strike the following affirmative defenses asserted by the State Defendants: 2, 4, 12, 17, 18, 19, 20, 21, 22, 30, 32, 33, and 37. In their response, the State Defendants agree to withdraw affirmative defenses 12, 17, and 37. [ECF No. 40, PgID 896] Accordingly, the Court must rule only on affirmative defenses 2, 4, 18, 19, 20, 21, 22, 30, 32, and 33. The State Defendants acknowledge that affirmative defense 2, but only to the extent it asserts sovereign immunity and Eleventh Amendment immunity, does not apply to the

claims against them. *Id*.  The State Defendants also acknowledge that affirmative defenses 18, 19, 20, and 21 do not apply to any of Plaintiffs' federal constitutional tort claims. *Id*. at PgID 897.  The State Defendants also acknowledge that affirmative defense 30 is inapplicable, except with respect to collateral estoppel and res judicata. *Id*. at PgID 897-98. The State Defendants further acknowledge that the portion of affirmative defense 32 pleading that they "acted in good faith [and] without malice, while performing discretionary activities" should be removed. *Id*. at PgID 898-99.

Plaintiffs argue that affirmative defenses 2 and 18-21 should be stricken because they rely on state law immunity defenses that are not relevant in this action that is based solely on federal claims pursuant to Section 1983.  The Court finds that, among other defenses in affirmative defense 2, the State Defendants assert absolute immunity and qualified immunity, both of which are appropriate defenses in this cause of action (and are the primarily bases for the Motion to Dismiss, discussed above). Although the State Defendants acknowledge that affirmative defenses 18-21 do not apply to any of Plaintiffs' federal claims (all Plaintiffs' claims are federal), the Court notes that the defenses regarding gross negligence (19), objective reasonableness (20), and social worker/absolute immunity (21) are reasonable defenses in this action.  The Court agrees that immunity based on the discharge of governmental function (18) is solely state law based on and not pertinent in this cause of action and may be stricken.

32

Plaintiffs arguments that affirmative defenses 2, 4, and 22 should be stricken because an absolute immunity defense is insufficient as a matter of law lacks merit – and is disingenuous – for the reasons discussed above. As to affirmative defense 30, to the extent it relies on res judicata or collateral estoppel, the Court finds that it would be premature to strike those defenses, as it is too early in litigation to determine how or whether either could or could not apply. The Court is not persuaded that affirmative defense 32 should be completely stricken, as it is premature to make a factual determination regarding probable cause. The Court agrees that affirmative defense 32 should be revised to remove the components of that defense grounded in "good faith" and "without malice." Plaintiffs' motion to strike affirmative defense 33 is denied, as a determination of whether constitutional rights were clearly established is a critical component of a qualified immunity defense, which is an appropriate defense.

Accordingly, the Court grants in part and denies in part the first Motion to Strike. Specifically, (1) the Court strikes affirmative defenses 12, 17, 18, and 37; (2) the Court denies the motion as to affirmative defenses 4, 22, and 33; and (3) the Court orders that affirmative defenses 2, 19-21, 30, and 32 be revised consistent with the terms of this Order and within 21 days of the date of this Order.

C.     ECF No. 33

In their second Motion to Strike, Plaintiffs ask the Court to strike the following affirmative defenses asserted by the State Defendants: 8, 14, 16, 30, 35, 38, 39, and 40. In their response, the State Defendants agree to withdraw affirmative defenses 8, 14, and 16 [ECF No. 40, PgID 896], leaving affirmative defenses 30, 35, 38, 39, and 40 for the Court to decide.

As determined above, affirmative defense 30 is to be revised consistent with this Order. Affirmative defense 35 ("Defendants did not violate their own procedures or rules as they relate to this case") may not be relevant to this cause of action, but at this stage of the proceedings, the Court finds that it would be premature to strike that defense. The Court will not strike affirmative defense 38 (reserving as an affirmative defense any defense set forth in the State Defendants answers to the Second Amended Complaint) or affirmative defense 40 (reserving the right to amend their affirmative defenses), but in order to accomplish either, the State Defendants will need to seek leave of the Court (absent a stipulation of Plaintiffs). With respect to affirmative defense 39 (incorporating the affirmative defenses of Defendant Lapeer County), the Court will not strike it because the affirmative defenses which it incorporates are readily available to Plaintiffs – they need only look at Defendant Lapeer County's answer to the Second Amended Complaint. ECF No. 12, PgID 314-16.

Accordingly, the Court grants in part and denies in part the second Motion to

Strike.  Specifically, (1) the Court strikes affirmative defenses 8, 14, and 16;  and (2) the Court denies the motion as to affirmative defenses 30, 35, 38, 39, and 40.

### D.    ECF No. 35

In their third pending Motion to Strike, Plaintiffs ask the Court to strike the following affirmative defenses asserted by the State Defendants: 3, 6, 23, 24, 25, 26, 27, and 29.  In their response, the State Defendants expressly agree to withdraw affirmative defenses 3, 6, 23, 24, 25, 26, and 29 [ECF No. 40, PgID 896], seemingly leaving only affirmative defense 27 for the Court to address.  The State Defendants, however, subsequently state that they "agree to remove standing as an affirmative defense" [ECF No. 40, PgID 897], because it need not be pleaded as an affirmative defense and can be raised at any time. Citing *Binno v. American Bar Assoc.*, 826 F.3d 338, 344 (6th Cir. 2016); *Wolfinger v. Standard Oil Co.*, 442 F.Supp.928, 931 (1977).

Accordingly, the Court grants Plaintiff's Motion to Strike Affirmative Defenses 3, 6, 23, 24, 25, 26, 27, and 29.

## V.    CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Motion to Dismiss [ECF No. 31] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Defendant Stacy May is DISMISSED.

IT IS FURTHER ORDERED that Defendants Gina Moegle and Susan Shaw are entitled to absolute immunity and all claims against them are DISMISSED insofar as they were acting as legal advocates when: (1) initiating the court proceedings to seek removal of the Children from Bambach; (2) filing the removal petition; and (3) taking any actions in furtherance of the child-custody proceedings involving the Children.

IT IS FURTHER ORDERED that Plaintiff's claims REMAIN against Defendants Gina Moegle and Susan Shaw with respect to "all of [their] actions [that] were investigative and administrative in nature," namely Plaintiffs' claims for relief in Counts I, II, III, V, VI, and VII that relate to the conduct of removing the Children from Bambach's custody prior to the preliminary hearing which occurred on January 14, 2016.

IT IS FURTHER ORDERED that the Motion to Strike the State Defendants' Affirmative Defenses 2, 4, 12, 17, 18, 19, 20, 21, 22, 30, 32, 33, and 37 [ECF No. 32] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that (1) affirmative defenses 12, 17, 18, and 37 are STRICKEN; affirmative defenses 4, 22, and 33 REMAIN; and (3) affirmative defenses 2, 19-21, 30, and 32 SHALL BE REVISED consistent with the terms of this Order, within 21 days of the date of this Order.

IT IS FURTHER ORDERED that the Motion to Strike the State Defendants'
Affirmative Defenses 8, 14, 16, 30, 35, 38, 39, and 40 [ECF No. 33] is GRANTED
IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that (1) affirmative defenses 8, 14, and 16 are
STRICKEN;  and (2) affirmative defenses 30, 35, 38, 39, and 40 REMAIN.

IT IS FURTHER ORDERED that the Motion to Strike the State Defendants'
Affirmative Defenses 3, 6, 23, 24, 25, 26, 27, and 29 [ECF No. 35] is GRANTED and
affirmative defenses 3, 6, 23, 24, 25, 26, 27, and 29 are STRICKEN.

IT IS FURTHER ORDERED that the remaining State Defendants (Gina
Moegle and Susan Shaw) shall re-file their Affirmative Defenses in a format that: (a)
maintains the same numerical order; (b) states "Stricken" next to any affirmative
defense number that the Court has ordered stricken; and (c) includes revised language
consistent with this Order for any affirmative defense ordered to be revised.

IT IS ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
Dated: May 29, 2020                        UNITED STATES DISTRICT JUDGE