## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARK BAMBACH, individually
and on behalf of his minor children,
M.B. and E.B. in their own right,

     Plaintiffs,

                                        CASE NO. 18-14039

v.                               HON. DENISE PAGE HOOD

GINA MOEGLE, individually, in
her capacity as Children's
Protective Services Investigator
with the Michigan Department of
Health and Human Services, SUSAN
SHAW, individually, in her capacity
as Children's Protective Services
Supervisor with the Michigan Department
of Health and Human Services, and
LAPEER COUNTY, a Michigan municipal
corporation,

     Defendants.

_____/

## ORDER GRANTING LAPEER COUNTY'S MOTION FOR SUMMARY JUDGMENT [ECF No. 62], GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT FILED BY GINA MOEGLE AND SUSAN SHAW [ECF No. 82], and DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 84]

## I.    INTRODUCTION

      Plaintiffs Mark Bambach and his minor children, M.B. and E.B., filed this 42

U.S.C. § 1983 action on December 23, 2018, alleging that Defendants violated their

Fourth, Fifth, and Fourteenth Amendment rights: (1) during a child protective services investigation; (2) when removing Plaintiff Mark Bambach's ("Bambach") two daughters, M.B. and E.B. (the "Children"), from his home; and (3) pursuing and participating in judicial proceedings against Bambach.     In this case, the key issue is if/when the Children were "removed" from Bambach's home/custody; it is an issue that permeates the claims and defenses of Plaintiffs and Defendants Gina Moegle and Susan Shaw (the "State Defendants"), respectively.

As discussed below, three motions for summary judgment have been filed, and each one has been fully briefed.  On September 8, 2021, the Court held a hearing on the three motions.  For the reasons that follow, the Court: (a) grants the Motion for Summary Judgment filed by Lapeer County [ECF No. 62]; (b) grants in part and denies in part the Motion for Summary Judgment filed by the State Defendants [ECF No. 82]; and (c) denies the Motion for Summary Judgment filed by Plaintiffs [ECF No. 84].

## II.    BACKGROUND

Bambach and his ex-wife, Amy, are the parents of the Children.  Bambach and Amy Bambach were divorced effective September 2013, and Bambach was the custodial parent, with Amy Bambach seeing the Children very little between November 2012 and April 2015.  Beginning in May 2015, Amy Bambach began

seeing the Children more.  Amy Bambach was scheduled to have the Children from December 23, 2015 to the morning of December 25, 2015.  Instead, due to Amy Bambach's contentions that Bambach was sexually abusing the Children, the Children were not returned to Bambach on December 25, 2015, and he did not regain custodial rights until November 2016.

Plaintiffs brought this Section 1983 action against Defendants because, as a result of a Child Protective Services ("CPS") investigation and ensuing events, the Children were not permitted to return to Bambach's home for more than 10 months. Plaintiffs allege in the Second Amended Complaint that:

> On Friday, 12/25/15, ***Despite having no warrant or authorized petition***, Moegle notes, in her 12/25/15 5:30 PM entry, that "***Amy was informed*** that this worker will call Mark and ***inform him that the girls are not returning home*** until CPS can investigate." (see CPS Investigation Report, p. 8, 12/25/15 5:30 PM entry (emphasis added [by Plaintiffs])).

ECF No. 9, PgID 173 (¶ 39).  Plaintiffs allege that Bambach was told on December 29, 2015 that the Children would not be returned to him until the CPS investigation was complete:

> On 12/29/15 at 9:22 AM, Mark called Moegle and wanted to know when he was getting his kids back. **Despite [CPS] not having a warrant or an authorized petition**, according to Moegle:
>
>> He was informed that this worker does not know the answer to his questions due to an ongoing investigation.

> ***He was informed that there is policy to follow*** and its
> CPS's goal to keep the children safe.
> (see CPS Investigation Report, p. 9, 12/29/15 9:22 PM entry (emphasis
>
> added)).

ECF No. 9, PgID 174 (¶ 42).

Moegle, an unlicensed CPS investigator at the Michigan Department of Health and Human Services ("MDHHS") in Lapeer County, investigated the claims that Bambach sexually abused the Children until January 13, 2016, when she signed a removal petition ("Petition"), which was heard by the Lapeer County Circuit Court the next day, January 14, 2016. *Id*. at 194.  Plaintiffs allege that Moegle made false statements and omissions to justify the seizure of Bambach's daughters, particularly after Bambach informed Moegle on December 30, 2015 that he would not speak to law enforcement and was taking the Fifth Amendment. *Id.*  Plaintiffs further allege that Moegle "knowingly made false statements and omissions in order to 'justify' her removal of the Bambach children" from Bambach's home. ECF No. 9 at ¶¶ 153-156, 165-167, 234-235.

Shaw was a licensed CPS Supervisor with the MDHHS in Lapeer County and Moegle's supervisor during the time period relevant to this action.  On December 30, 2015, Moegle conducted a Case Conference with the Children's Supervisor (Shaw), who was provided information regarding the case. ECF No. 9, PgID 211.

4

On January 12, 2016, Moegle conducted another Case Conference with Shaw at the Lapeer County MDHHS office.  Shaw was provided information regarding the case, and this Case Conference was deemed a "Successful Supervision." ECF No. 9, PgID 211. Moegle stated in her deposition that Shaw was the one who authorized the Petition. See ECF No. 9, PgID 212.

Plaintiffs assert that all of their claims for relief relate to the investigative and administrative actions by the State Defendants: (a) removing the Children from Bambach's custody without a warrant in violation of the Fourth Amendment (Moegle); (b) removing the Children from Bambach's custody without affording Plaintiffs their procedural due process rights, in violation of the Fourteenth Amendment (Moegle and Shaw); (c) removing the Children from Bambach's custody without any justification in violation of their Fourteenth Amendment substantive due process rights (Moegle and Shaw); (d) executing a removal order in violation of the 4th Amendment which was issued based upon false statements and omissions that were made to the judge and which the judge relied upon in issuing that removal order (Moegle and Shaw); (e) implicitly authorizing, approving, or knowingly acquiescing to a subordinate's unconstitutional conduct (Shaw); and (f)

imposing severe sanctions for failing to waive the Fifth Amendment right against self-incrimination (Moegle).[1]

## III.   LEGAL STANDARD

Rule 56(a) of the Rules of Civil Procedure provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,

---

[1] In the Second Amended Complaint, Plaintiffs allege four claims that have been limited by this Court to allegations that "all of [their] actions [that] were investigative and administrative in nature" that "relate to the conduct of removing the Children from Bambach's custody prior to the preliminary hearing which occurred on January 14, 2016." ECF 50, PageID.1068. These claims are: (1) State Defendants violated the Children's Fourth Amendment rights by removing them from their Bambach's custodial home without judicial preapproval or warrant; (2) State Defendants violated Plaintiffs' Substantive and Due Process rights afforded to them under the Fourteenth Amendment; (3) State Defendants violated Bambach's Fifth Amendment right by compelling him to self-incriminate; and (4) supervisor liability.

6

475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be entered against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial.  In such a situation, there

can be "no genuine issue as to any material fact," since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to

the substantive law to identify which facts are material.  *Anderson*, 477 U.S. at 248.

## IV.    ANALYIS

### A.    Lapeer County's Motion for Summary Judgment (Count XI)

Plaintiffs' sole claim against Lapeer County is for *Monell* liability.  Lapeer

County contends that Plaintiffs have not identified a single policy, procedure or

custom maintained by Lapeer County that could be said to have contravened

Plaintiffs' rights.  The Sixth Circuit recognizes four methods by which a party can

establish a *Monell* violation: "(1) the municipality's legislative enactments or official

agency policies; (2) actions taken by officials with final decision-making authority;

(3) a policy of inadequate training or supervision; or (4) a custom of tolerance or

acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d

426, 429 (6th Cir.2005) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)).

Plaintiffs contend that they have stated a viable *Monell* claim because: (a) Lapeer County's policies and customs violated their Fifth and Fourteenth Amendment rights; and (b) those policies and customs were the moving force behind the violations. Plaintiffs rely primarily on *Pembaur v City of Cincinnati*, 475 U.S. 46 (1986),[2] and *In re Blakeman*, 326 Mich. App. 318 (2018). At the outset of their response brief, Plaintiffs assert:

> 1. At all times, the Lapeer County Prosecuting Attorney ("PA") was a participant in the child protection proceeding ("CPP") entitled *In the Matter of M.B. and E.B.*, Lapeer County Circuit Court ("LCCC") Case No. 16012291. Ex. A, Lapeer RTA #1.

---

[2] In *Pembaur*, the United States Supreme Court recognized that, under the appropriate circumstances, "the County Prosecutor was acting as the final decisionmaker for the county, and the county may therefore be held liable under § 1983" when the prosecutor ordered deputy sheriffs to enter a building. *Pembaur*, 475 U.S. at 485. As Plaintiff acknowledges, however, a county prosecutor acts as an agent of the state, rather than the county, **when prosecuting state criminal charges,** and therefore the prosecutor's conduct in prosecuting state criminal charges cannot be used to establish a county policy in support of a municipal liability claim against the county under § 1983. *Gavitt v Ionia County*, 67 F.Supp.3d 838, 860 (E.D. Mich. 2014.). The Court also notes that the *Pembaur* court stated, "*Monell* held that recovery from a municipality is limited to acts that are, properly speaking, 'of the municipality,' *i.e.*, acts that the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 470. In this case, the alleged policy was instituted by the PA and not by Lapeer County, and no evidence exists for the contention that the Prosecuting Office took its orders from Lapeer County on its alleged practice of using civil cases as leverage on related criminal cases.

2. Lapeer contracted with the Michigan Department of Health and Human Services ("MDHHS") for the PA to provide legal representation for MDHHS in abuse and neglect proceedings filed in the LCCC. Ex. A, #2.

3. Ex. B is a true and correct copy of the original Agreement Number: PROFC17-44001 (hereinafter the "Contract") between MDHHS and Lapeer County ("Lapeer"). Ex. A, #3.

4. As the PA, Timothy Turkelson ("Turkelson"), signed the Contract with the MDHHS on behalf of Lapeer. Ex. A, #4.

5. As the PA, Turkelson, had the authority to administer the Contract with MDHHS on behalf of Lapeer. Ex. A, #5.

6. Because he had the authority to administer the Contract with MDHHS on behalf of Lapeer, Turkelson was the policy maker with regard to that Contract. Ex. A, #6.

7. At all relevant times, Turkelson was exercising his authority to administer the Contract with MDHHS on behalf of Lapeer. Ex. A, #7.

Based on the foregoing statements, the Court finds that the PA was acting as a contractor for MDHHS, a State of Michigan department.  As a result, for purposes of investigating and/or prosecuting abuse and neglect matters, the PA was serving as an agent of the State of Michigan, not on behalf of Lapeer County.  Accordingly, the Court finds that there is no evidence that Lapeer County violated any constitutional rights of Bambach or any other Plaintiffs.

Based on the relationship between MDHHS and the PA with respect to abuse and neglect matters, it is not pertinent that several prosecutors in the PA

acknowledged that the office of the PA could or would use information in a criminal case that was learned in a corresponding CPS case. ECF No. 68, Ex. C at 26-27.  No criminal case was instituted against Bambach with respect to the underlying events (the PA did not even request a warrant), so the actions of the prosecutors from the PA are not relevant and cannot form the basis of a Fourth, Fifth, or Fourteenth Amendment claim against Lapeer County.

The Court further finds that there is no merit to Bambach's claim that Lapeer County violated his Fifth Amendment rights against self-incrimination. Bambach was never criminally charged, and he never had contact with the PA, as he elected not to speak to Lapeer County prosecutors (or any other investigators).  There is no evidence Lapeer County took any discernible steps that violated any of Bambach's Fifth Amendment rights. "A necessary factor in all of these considerations is that, for a *Monell* claim to be viable, the municipal action (or inaction) must have been the moving force behind the constitutional harm." *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 607 (6th Cir.2007) (citing *Monell*, 436 U.S. at 694).

The Court also finds that Plaintiffs have not submitted evidence to support their allegations that Lapeer County established policies or customs that violated their Fourth, Fifth and Fourteenth Amendments rights by:

> [A]cting with deliberate indifference in implementing a policy, procedure, custom, and/or practice of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees, and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth, Fifth, and Fourteenth Amendments, when performing actions related to juvenile neglect and abuse proceedings.

ECF No. 9, PageID.240.

"Deliberate indifference is a critical element of claims of municipal inaction. This is a stringent standard . . . the evidence must demonstrate more than just 'a collection of sloppy, or even reckless, oversights. Instead, the record must show that the [defendant] consciously never acted when confronted with its employees' egregious and obviously unconstitutional conduct." *France v. Lucas*, 1:07-cv-03519-DCN (#206, at p. 22-23) (N.D. Ohio Oct. 22, 2012) (internal quotation omitted) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 600 (6th Cir. 2008) (quoting *Doe v. Claiborne Cty*. 103 F.3d 495, 508 (6th Cir.1996)). "Deliberate indifference . . . requires proof a municipal actor disregarded a known or obvious consequence of his action. A standard any lower would result in a reduction to de facto respondeat superior which the Supreme Court rejected in *Monell*. *Anderson v. Jones*, 440 F.Supp.3d 819, 837-38 (S.D. Ohio 2020) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989) (internal citations omitted)). "Establishing a pattern of unconstitutional conduct is difficult because there must be a frequently

recurring constitutional violation of a similar nature in advance of the violation at issue." *Anderson*, 440 F. Supp. 3d at 838 (citing *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 575 (6th Cir. 2016)).

In this case, there is no evidence that Lapeer County prosecutors engaged in any "egregious and obviously unconstitutional conduct" that violated Plaintiffs' rights. There is no evidence Lapeer County was ever "confronted with its employees' egregious and obviously unconstitutional conduct," such that it could be said to have ratified or affirmed it or shown any deliberate indifference.[3]  The Court

---

[3] The "tradition" that Plaintiffs insist exists in Lapeer County was not one created by Lapeer County, but by the PA. As has been held by the Sixth Circuit Court of Appeals under similar circumstances:

> The thrust of the complaint is that [the prosecutor] —and perhaps one or two other members of the Prosecutor's Office—instigated and implemented habitually unconstitutional practices, not that they were following municipal policy in doing so. *Municipal liability attaches only where the policy or practice in question is "attributable to the municipalit*y," but [plaintiff]'s complaint contains no allegations that the practice at issue here was acquiesced to or informed by municipal actors rather than by prosecutors who had adopted the strategy in order to win criminal convictions. The word 'policy' generally implies a course of action consciously chosen from among various alternatives." Municipality is liable under § 1983 only for 'a pervasive custom or practice, of which the city lawmakers know or should know." *Again, state prosecutors' actions in prosecuting state crimes cannot themselves establish municipal policy*.

*D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (emphasis added by Lapeer County) (internal citations omitted).

holds that Lapeer County does not have established policies or customs that violated Plaintiffs' rights.

The Court grants Lapeer County's motion for summary judgment with respect to Count XI, the only claim Plaintiffs filed against Lapeer County.

**B.    State Defendants'/Plaintiffs' Motions for Summary Judgment**

The State Defendants assert that there is no evidence to support a finding that: (1) Bambach failed to consent (or that he revoked his consent) to the continued placement of the Children with Amy Bambach; (2) Moegle compelled Bambach to give self-incriminating testimony; (3) Moegle required Bambach to confess to sexually abusing the Children to regain care and custody; (4) Moegle lied or made omissions while acting in her administrative and investigative capacity; or (5) Shaw possessed information that revealed a strong likelihood of Moegle's allegedly unconstitutional conduct.

Plaintiffs counter that there is no genuine dispute of material fact that: (a) the State Defendants are not entitled to absolute immunity; (b) Moegle unlawfully seized the Children without a court order; (c) Moegle did not afford Plaintiffs any procedural due process; (d) Moegle's conduct shocks the conscience; (e) Shaw implicitly authorized, approved, or knowingly acquiesced to Moegle's conduct; and (f) Moegle violated Bambach's 5th Amendment rights.

13

*1. Fourth Amendment Claims* (Counts I, IV, V, and VIII)

In the Sixth Circuit, the Fourth Amendment applies to social workers. *Andrews v. Hickman Co., Tenn.*, 700 F.3d 485, 859-60, 863-64 ("the presumption appears to be that any state officer [including a social worker] should operate with the default understanding that the Fourth Amendment applies to her actions unless a specific exception to the requirements of the Fourth Amendment has been found to apply."). Whether a violation occurred turns on whether Plaintiffs were "seized" within the meaning of the Fourth Amendment. A "seizure occurs when, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.'" *O'Malley v. City of Flint*, 652 F.3d 662, 668 (6th Cir. 2011) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Courts generally should take the plaintiff's age into account when determining if a reasonable person would have felt free to leave. *See, e.g.*, *Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005). There is a two-part test to determine whether the Fourth Amendment is implicated: was there a seizure? If so, was it a lawful seizure in compliance with the Fourth Amendment? In other words: (a) would a reasonable child feel he or she is free to leave?; and (b) Was there probable cause or an exception to the warrant requirement (*i.e.*. consent)? *Schulkers v Kammer*, 955 F.3d 520, 537 (6th Cir. 2020).

Plaintiffs allege Moegle "seized" the Children from Bambach's custody without a warrant or court order, in violation of the Children's Fourth Amendment rights.  The State Defendants argue that no material evidence exists that the Children could reasonably determine whether they were free to leave.  It is undisputed that the Children were 3 years-old at the time of this CPS investigation and were staying with their mother, Amy Bambach. No evidence has been submitted to the Court that either of the Children felt unsafe with Amy Bambach or demanded to be returned to Bambach.  Additionally, no evidence exists that the Children were taken into MDHHS's or State Defendants' physical custody or seized between December 25, 2015 and January 14, 2016.

The State Defendants reasonably argue that, on December 25, 2015, at the time sexual abuse complaint against Bambach was made, the Children were with their noncustodial mother, Amy Bambach, and Moegle and Shaw were required to take "necessary action to protect the health or safety of the child by working with the persons responsible and legal authorities to obtain necessary temporary care, shelter and medical care for the child."  Moegle worked with Bambach and Amy Bambach to create a safety plan to ensure the Children's continued safe placement. On December 25, 2015, Amy Bambach agreed the Children would remain in her

care, and, later that same day, Bambach gave Moegle his consent that the Children could remain in Amy Bambach's care.

The State Defendants accurately argue that there is no evidence that Bambach expressly revoked his consent for the Children to remain with Amy Bambach. But, Bambach called Moegle on December 29, 2015, and Bambach told Moegle that he "wanted to know when he was getting his kids back." Although this does not demonstrate, as a matter of law, that Moegle seized the Children at that time, the Court finds that it is evidence from which a factfinder could decide that Bambach had revoked his consent. And, Bambach not only asked when he would get the Children back, he told Moegle he would not talk to law enforcement and that he was hiring an attorney to get the Children back. It is undisputed that the State Defendants knew that much.

The Court finds that this creates a genuine dispute of material fact as to whether Bambach revoked his consent on or about December 29 or 30, 2015. On this basis, Moegle's and Shaw's motion for summary judgment on the basis of consent must be denied. But, as Bambach did not expressly revoke his consent (and neither of the Children allegedly revoked her consent), Plaintiffs cannot demonstrate as a matter of law that the State Defendants seized the Children in violation of the

Fourth Amendment. Plaintiffs' motion for summary judgment on the basis of the absence of consent likewise must be denied.

The State Defendants contend that, even if a factfinder could determine that there was a seizure, they had a legitimate reason to suspect that Bambach sexually abused the Children. Citing *Schulkers*, 955 F.3d at 538.  They claim that Amy Bambach reported to medical staff at Genesys Emergency Department that the girls told her that Bambach puts his finger way up there when he wipes them, and medical evidence existed that both of the Children had vaginal infections and urinary tract infections.

The State Defendants argue that there was no evidence available to them that reasonably suggested the Children had not been sexually assaulted.  This argument is inconsistent with some evidence in the record, in particular the records and statements of Emergency Room Doctor Alan Janssen and Registered Nurse Andrea Del Vecchio.  Each of them stated that he/she did not communicate to Moegle that there was any evidence of sexual assault with respect to the Children, only that there were allegations of sexual assault by Amy Bambach.

For the reasons stated above, the Court denies both Plaintiffs' and the State Defendants' motions for summary judgment with respect to Counts I, IV, V, and VIII.

### 2. *Fifth Amendment Claim Against Moegle* (Count X)

As to Bambach's Fifth Amendment claim against self-incrimination, the constitutional protection is worded as one applicable to criminal cases, and thus it applies in any situation in which a criminal prosecution might follow, regardless of how likely or unlikely that outcome may seem. See *United States v Miranti*, 253 F.2d 135, 139 (2d Cir. 1958) ("We find no justification for limiting the historic protections of the Fifth Amendment by creating an exception to the general rule which would nullify the privilege whenever it appears that the government would not undertake to prosecute."). Accordingly, "[t]he privilege can be claimed in *any proceeding*, be it criminal or civil, administrative or judicial, investigatory or adjudicatory." *People v. Ferency*, 133 Mich.App. 526, 533 (1984), quoting *In re Gault*, 387 U.S. 1, 47 (1967) (quotation marks and citation omitted). Any testimony "having even a possible tendency to incriminate is protected against compelled disclosure." *People v Lawton*, 196 Mich.App. 341, 346 (1992). The privilege may be invoked when criminal proceedings have not been instituted or even planned. *People v. Guy*, 121 Mich.App. 592, 609-614 (1982).

The State Defendants contend that there is no material evidence to support Bambach's allegation that Moegle violated his Fifth Amendment right by conditioning the receipt of CPS family services or reunification with the Children

on Bambach confessing to sexually abusing the Children. *In re Blakeman*, 326 Mich.App. 318, 338 (2018). They state that, on December 29, 2015, Bambach, under the advice of his attorney, told Moegle he would no longer speak with Lapeer County CPS.

The State Defendants note that Moegle offered to meet with both Bambach and his attorney, and Bambach refused to meet. Because Bambach refused to meet, they claim that they could not offer him services or work toward reunification of Bambach and the Children during the investigation. They again cite Bambach's voluntary consent to Moegle over the telephone on December 25, 2015 to placement of the Children with Amy Bambach, together with their claim that he never expressly revoked that consent or contacted Shaw. For these reasons, the State Defendants claim there is no evidence that either of them forced or required Bambach, in violation of the Fifth Amendment, to admit abusing the girls as a condition precedent to visiting with or returning the Children to his care. The Court agrees and grants the State Defendants summary judgment on Bambach's Fifth Amendment claim against Moegle (Count X).

3. *Due Process Claims* (Counts II, III, VI, and VII)

The State Defendants maintain that there is no evidence to support Plaintiffs' allegations that State Defendants: (a) failed or refused to follow laws, statutes,

procedures in this child sexual assault investigation; (b) were not pursuing a legitimate government interest; (c) were deliberately indifferent to Plaintiffs' established constitutional rights; or (d) intended to harm Plaintiffs or exercised any willful or corrupt conduct. They also claim that no evidence exists that Plaintiffs suffered harm.

Deliberate indifference claims require "two components, one objective and one subjective." *Brown ex rel. Estate of Henry v. Hatch*, 984 F. Supp. 2d 700, 711 (E.D. Mich. 2013). The objective prong requires "'the deprivation alleged' be 'sufficiently serious[.]'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective prong requires the defendant to have a "'sufficiently culpable state of mind'" such that the defendant "knows of and disregards an excessive risk to [the child's] health or safety." *Id*. (citing *Farmer*, 511 U.S. at 834); see also *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006); *Lethbridge v. Troy*, No. 06-14335, 2007 U.S. Dist. LEXIS 68281, at 15 (E.D. Mich. Sept. 17, 2007) (citing *Farmer*). This means the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark-Murphy*, 439 F.3d at 286 (internal quotations omitted).

The State Defendants assert that Plaintiffs have offered no evidence to support either prong of the deliberate indifference standard. The objective prong of the deliberate indifference standard requires a "sufficiently serious" deprivation "of a constitutionally protected liberty interest to be free from the infliction of unnecessary pain." *Meador v Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir. 1990); *Brown*, 984 F. Supp. 2d at 711. Plaintiffs cannot demonstrate that they were subjected to sufficiently serious risk of injury or abuse while Moegle conducted the investigation of the sexual abuse complaint from December 25, 2015 through January 14, 2016. See *Meador*, 902 F.2d at 476; *Brown*, 984 F. Supp. 2d at 711.

The State Defendants also suggest that no evidence exists that Shaw knew of, acquiesced to, or suspected Moegle's conduct was unconstitutional or that she was acting contrary to Michigan law and CPS policies.  The State Defendants note that, to the contrary, the Office of the Family Advocate (OFA), which investigates child welfare-related complaints directed to the OFA, investigated this matter and determined that Lapeer County CPS adhered to all appropriate law, policy, and procedure. (ECF No. 82-16, PageID.2250).

As to Plaintiffs' Fourteenth Amendment substantive due process claims, the State Defendants state that "the State has a concomitant interest in the welfare and health of children in its jurisdiction, and in certain narrowly-defined circumstances,

the State's interest in a child's well-being may supersede that of a parent." *See Santosky v. Kramer*, 455 U.S. 745, 766-67 (1982); *see also Stanley v. Illinois*, 405 U.S. 645, 652 (1972) (recognizing that because the State has cognizable interests in the safety of children in its jurisdiction, "neglectful parents may be separated from their children").

The State Defendants assert that Moegle and Shaw have a concomitant and statutory interest in the health, well-being, and welfare of children who are alleged to be victims of sexual abuse. They believe that no material evidence exists that demonstrates Moegle's and Shaw's actions deprived Bambach of his fundamental right to provide care and custody of his children. They say that, while CPS investigated the serious allegations that Bambach sexually assaulted his daughters and until the removal petition was filed, the Children were apart from Bambach for 20 days. They claim that, in this narrowly-defined circumstance and narrow time frame, the State's interest in the Children's well-being superseded that of Bambach.

The Sixth Circuit has stated, "Adopting the reasoning of another circuit, this Court held that "when a parent voluntarily consents to a safety plan [in a child abuse investigation], 'no hearing of any kind is necessary; hearings are required for deprivations taken over objection, not for steps authorized by consent.'" [*Smith v. Williams-Ash*, 520 F.3d 596, 600 (6th Cir. 2008)] (quoting *Dupuy v. Samuels*, 465

22

F.3d 757, 761- 62 (7th Cir. 2006)).” *Schulkers*, 955 F.3d at 542. The State Defendants argue that the safety plan from December 25, 2015 to January 14, 2016, to which Bambach agreed without duress, permitted the Children to continue to reside with Amy Bambach during the pendency of the CPS sexual abuse investigation. And, the State Defendants argue, because Bambach voluntarily consented to the safety plan’s placement during the CPS investigation, a hearing, warrant, or judicial pre-approval was not required.  But, as noted above, there is a question of fact as to whether Bambach withdrew his consent.

Accordingly, the Court concludes that there is a genuine dispute of material fact regarding whether a hearing was necessary with respect to the deprivation of a relationship between Bambach and the Children during the entirety of the CPS sexual abuse investigation, such that a jury may could find Moegle liable for violation of Plaintiffs’ procedural and substantive due process rights.  The evidence does not, however, establish as a matter of law that Moegle is liable for violation of Plaintiffs’ due process rights.

As to Plaintiffs’ supervisory liability claims against Shaw, the State Defendants assert that no material evidence exists that Shaw violated any statutes or policies, nor is there any evidence that she caused constitutional injury. The State Defendants argue that there are no allegations that Shaw abdicated any of her

23

responsibilities—rather they contend that Plaintiffs simply believe the State Defendants performed their duties inadequately. See *Winkler,* 893 F.3d at 899. For these reasons, the State Defendants maintain that Plaintiffs' failure to supervise claims should be dismissed.

As addressed previously, however, there is evidence that, on both December 30, 2015 and January 12, 2016, Moegle communicated with Shaw as to how to proceed in this case and that Shaw authorized the Petition. The Court finds that evidence to be sufficient to create a genuine dispute of material fact as to whether Shaw may be liable for supervisory liability. The evidence does not, however, establish as a matter of law that Shaw is liable for supervisory liability.

For the reasons stated above, the Court concludes that both Plaintiffs' motion for summary judgment and the State Defendants' motion for summary judgment must be denied with respect to Plaintiffs' claims against Moegle and Shaw for violation of Plaintiffs' substantive and procedural due process rights. Counts II, III, VI, and VII remain before the Court.

### 4. *Qualified Immunity*

The Court previously addressed and denied the State Defendants' claim of qualified immunity in their motion to dismiss, and they raise the issue again in their Motion for Summary Judgment. They argue that neither Moegle nor Shaw had any

reason to suspect or understand that they violated any clearly established right. They contend that they had no fair warning their conduct during the investigation could have been viewed as unconstitutional, especially as Bambach never took any actions to have the girls returned to his care and he ceased all contact with Moegle on January 5, 2016, nine days before the petition was filed. The State Defendants, however, again ignore that a question of fact exists whether Bambach revoked his consent to the Children being with Amy Bambach.

Defendants also cite the findings of the OFA that they acted appropriately ("After careful review, the OFA has determined Lapeer County CPS has adhered to all appropriate law, policy, and procedure in the matter. CPS filed a removal petition after receiving two independent medical examinations of the children that resulted in concerns of sexual abuse. Mr. Bambach has refused to cooperate with CPS during the investigation.").  For these reasons, the State Defendants claim that no material evidence exists that any reasonable official in Moegle's or Shaw's shoes would have understood their actions were unconstitutional.

The State Defendants assume too much, however, because they frame the primary issue as whether Bambach revoked his initial consent to placement of the Children with Amy Bambach. As discussed above, there is a question of fact whether a reasonable social worker investigating this case would have understood Bambach's

December 29, 2015 conversation with Moegle as a revocation of Bambach's consent to the continued placement of the Children with Amy Bambach. For that reason, qualified immunity is denied again.

## V. CONCLUSION

Accordingly,

IT IS ORDERED that Lapeer County's Motion for Summary Judgment [ECF No. 62] is GRANTED and LAPEER COUNTY is DISMISSED from this action.

IT IS FURTHER ORDERED that the State Defendants' Motion for Summary Judgment [ECF No. 82] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment [ECF No. 84] is DENIED.

IT IS FURTHER ORDERED Counts I, II, III, IV, V, VI, VII, and VIII, to the extent provided for in this Order and the Court's Order dated May 29, 2020 (ECF No. 50), remain before the Court.

IT IS FURTHER ORDERED that Counts IX, X, and XI have been DISMISSED.

IT IS ORDERED.

Date: March 31, 2023              s/Denise Page Hood
                                  _____
                                  DENISE PAGE HOOD
                                  UNITED STATES DISTRICT JUDGE